## LILLIE HANNA V. TENNIE HANNA.

### No. 811.

1. **Mutual Benefit Insurance—Beneficiaries—Mother and Heirs.**—H. became a member of a mutual life insurance association, and his certificate was made payable to his "mother, or his lawful heirs." His mother did not live with him, and was not dependent upon him for support, but the certificate was delivered to her, and she paid all assessments due thereon. At the time of his death, H. left a widow and infant child. The constitution and by-laws of the association showed that its purpose was to provide a fund for the benefit of the families of deceased members, and that widows and heirs were recognized therein as the beneficiary class. *Held*, that the fund was payable to the widow and child of H., instead of to his mother.

2. **Same—Heirs Defined.**—The word "heirs," as used in the foregoing connection, must be construed to mean those who are entitled to receive the estate under the statutes of descent and distribution.

APPEAL from Anderson. Tried below before Hon. A. B. WATKINS

*Leake, Henry & Reeves* and *McMeans & Gill,* for appellant.—The wife and child of the insured being alive, and the mother of insured not being a dependent nor an actual constituent of the family of the insured, is neither a member of his family nor an heir, and can not take said insurance as against the widow and child of assured. Schonfield v. Turner, 75 Texas, 324; Thomas v. Leake, 67 Texas, 469; Lyon v. Rolfe, 42 N. W. Rep., 1094; Marsh v. American Legion of Honor, 21 N. E. Rep., 1070; Elsie v. Relief Assn., 7 N. E. Rep., 844; Sanger v. Rothschild, 26 N. E. Rep., 3; May v. Safety Reserve Fund, 14 Daly, 389; Hannigan v. Ingraham, 8 N. Y., 232; Lawill v. Lawill, 29 Ill. App., 643.

*John J. Word* and *J. R. Burnett,* for appellee.—Appellant was not entitled to recover, because the policies of insurance were payable and delivered to appellee, the mother of the insured, who paid all assessments thereon, and there being no evidence that appellee was trustee for appellant and her child, as alleged. The mother had an insurable interest in the life of her son, and the insurance association could lawfully issue and pay the policies to the mother upon her being designated as beneficiary by the insured. The constitution and by-laws of the association did not forbid the mother being the beneficiary, although she was not dependent on the insured, and he had a wife and child at the time. Thomas v. Leake, 67 Texas, 469; Klotz v. Klotz, 22 S. W. Rep., 551, 552; Story v. Benefit Assn., 95 N. Y., 474; Bankers' Assn. v. Stapp, 19 Am. St. Rep., 788, 789; Bacon on Ben. Soc., secs. 236, 246, 248, 255.

GARRETT, CHIEF JUSTICE.—This action was by the appellant, Lillie Hanna, who sued in behalf of herself and her minor child, Lillie May Hanna, to recover of the appellee, Tennie Hanna, $4500 paid to her by the Locomotive Engineers' Mutual Life and Accident Insurance Association, upon three policies of insurance upon the life of Silas Hanna, deceased. Appellant is the widow and Lillie May is the child of said Silas Hanna, and the appellee is his mother. The policies were made payable to "Mrs. T. Hanna, mother, or his heirs." Trial below resulted in a judgment for the defendant.

The facts are, that Silas Hanna died in Palestine, Texas, in February, 1892, and at the time of his death was a member in good standing of the Brotherhood of Locomotive Engineers, and had been for several years. He left surviving him his wife, Lillie Hanna, and their minor daughter, Lillie May Hanna, one year old, who live together in Palestine. Defendant, Tennie Hanna, is the mother of deceased; his father had been dead for ten years. Defendant had two other children—one a married daughter, and the other an adult son. She lived also in Palestine, but did not live with the deceased, and was not dependent upon him for support. She and plaintiff lived in separate residences.

There was connected with the Brotherhood of Locomotive Engineers an insurance organization, called "Locomotive Engineers' Mutual Life and Accident Insurance Association," and by the constitution of the order each member was required to carry therein at least one policy of insurance. The amount to be paid by the association on each policy did not exceed $1500, and was raised by an assessment for the purpose of 50 cents on each member.

In December, 1889, Silas Hanna took out three policies of insurance in said association, directing the payments thereon to be made to his mother. Each policy or certificate of insurance was in the following form:

"[DUPLICATE.]

"ORGANIZED DECEMBER 3, 1867.                    "INCORPORATED MARCH 1, 1894.

"LOCOMOTIVE ENGINEERS' MUTUAL LIFE AND ACCI-
DENT INSURANCE ASSOCIATION.

"Certificate of Membership and Policy of Life Insurance.

"POLICY, $1500.   No. 11,777.

"This certifies that Silas Hanna was admitted a member of this
association this thirty-first day of December, 1889.   Cleveland, O.,
——, 18—.                              "A. B. YOUNGSON, President.

"HARRY C. HAYES, Gen. Sec. and Treas.

"All payments that may accrue or become due to the heirs of the
person insured by virtue of this policy will be payable to Mrs. T.
Hanna, mother; or his lawful heirs.

"Which can not exceed the amount the association shall be able to
pay from one assessment.   Any member of this association neglecting
or refusing to pay any assessment, when ordered as provided in the
by-laws, or being expelled for one year from the Brotherhood of Loco-
motive Engineers, shall forfeit all right and title to membership, and
be debarred from further participating in this insurance, or benefits
arising from the same.

"For the benefit of the Brotherhood of Locomotive Engineers."

The policies were delivered to the mother, and she paid all the as-
sessments thereon.   Upon the death of Silas Hanna she collected from
the association $4500, the full amount of the three policies, claiming
the same in her own right.

The following are by-laws of the insurance association:

"Article 1.   This association shall be designated The Locomotive En-
gineers' Mutual Life Insurance Association, its object being to aid and
benefit the families of deceased members of the Brotherhood in a sim-
ple and substantial manner."

"Article 20.   When the death of a member of this association occurs,
or injuries are received as specified in article 19, the secretary of the
division shall transmit to the president and general secretary a report
of such death or injury, signed by two members of the insurance asso-
ciation in good standing, together with his policy and the certificate
of a physician or coroner stating age and cause of death or injury.   He
shall also give the name and residence of the widow or heirs of the de-
ceased to whom his insurance is payable.   Upon receiving this infor-
mation, the president and general secretary shall issue a notice, through
the Journal, to all division secretaries, stating the age and date of ad-
mission, and date and cause of death or injury sustained; also names
of parties to whom his insurance is payable; and order an assessment
of 50 cents for each $1500 policy held upon each of the contributing
members, to be collected by the division secretaries and forwarded to
the general secretary within thirty days from the date of such notice."

Article 2 provides, "that any member failing to pay an assessment when ordered, as herein provided, shall forfeit his membership and any right or title he or his heirs may have to any benefit or claim in or against said association."

Article 22 provides, "that the treasurer of each division shall give each member a dated and numbered receipt for each assessment as paid, or give credit on the books, or both. Such receipt or book credit shall be sufficient evidence of the good standing of the member, and entitle him or his heirs to the full benefit."

Article 23 provides: "In all cases where members of the association are unable to pay the assessments levied, and are carried or the same is paid by his division, the number of brothers so carried by any division shall be reported to the president and secretary, and they shall deduct from the money due the widow upon the death of the insured, and pay the subdivision the amount due them, said amount to be certified to by the C. E. and F. A. E. of each division."

Article 24 provides, "that where there are no other means to pay the expenses of last sickness and funeral of deceased members, upon proper certificates they shall be paid by the secretary, and the amount of said bills shall be deducted pro rata from the share of each beneficiary in the insurance."

The constitution of the Brotherhood of Locomotive Engineers contains the following provisions:

"In case of the death of any brother in good standing, it shall be the duty of the chief engineer to appoint a committee, whose duty it shall be to inquire as to the pecuniary situation of the family of the deceased brother, and should the committee report that they are in want of assistance, it shall be the duty of every member of the division to see that they are assisted by all honorable and reasonable means; that the children, if there be any, are not allowed to suffer or be neglected, and they shall extend over them their protection and care so long as they may stand in need of it.

"Sec. 2. The widow of any deceased brother shall be assisted in every way and manner which may be deemed proper, and it shall be the duty of every individual member of the division to use every effort consistent with the rules of propriety to prevent her from coming to destitution or disgrace, and they shall treat her with respect and consideration so long as she may prove herself worthy."

It is provided in the certificate or policy of insurance, that all payments that might become due thereon to the heirs of the deceased should be made to the mother or his heirs. The heirs of Silas Hanna are thus assumed to be the beneficiaries of the fund; and his heirs are his surviving wife and their child. But who are the beneficiaries of a fund provided by a mutual benefit association must be determined by the constitution and by-laws of the association, and not by the designation in the certificate. Bacon's Benefit Societies, secs. 241, 244; Elsey v. Relief Association, 142 Mass., 224; Marsh v. American

Legion of Honor, 149 Mass., 512; Thomas v. Leake, 67 Texas, 469. The purpose of the association is clearly shown by the laws of the organization to be to provide a fund for the benefit of the families of deceased members, and widows and heirs are recognized as the beneficiary classes by the provisions for payment of assessments, report of death or injuries, forfeiture of claim to benefits, and the deduction of assessments paid by the deceased's division, and expenses of last sickness and funeral from the amount due the beneficiaries. Defendant was not a member of the family of deceased, and was not dependent on him for support. She was not an heir, for if the benefit is for the "heirs" of deceased, that word must be construed to mean those who are entitled to receive the estate under the statute of descent and distribution. Bacon's Benefit Societies, sec. 260. The widow and child are the heirs of deceased, although on default of issue of him the mother might be. So in either event, whether the payment is for the benefit of the family or the heirs of the deceased, plaintiff is entitled to a recovery. It is not necessary to determine any question as to the power of Mrs. Tennie Hanna to collect the fund under the designation in the certificate by the deceased as the person to whom payment should be made, since by this suit she is treated as trustee and recovery sought of her. Nor does the fact that she may have had an insurable interest in her son's life affect this case. She probably had such interest; but she was not eligible under the laws of the association to receive the benefits which it was organized to provide, and being ineligible and having received the money, she must be held as the trustee of those who are entitled to it. Schonfield v. Turner, 75 Texas, 324.

Plaintiff and her child were both the family of deceased and his heirs. A further construction of the laws of the association would become necessary to determine what division, if any, of the fund should be made between them, arising out of the question whether they should take it as a family or as heirs. While plaintiff has sued for the benefit of herself and minor child, and has asked the judgment of the court as to the share each is entitled to, yet the minor is not before the court as a party to any issue between herself and mother, and has no one to represent her interests in the issue that would thus arise. Hence we have concluded not to attempt any adjudication between them, but to require the fund to be paid into court, for it to decide, upon a proper issue, how it shall be paid.

We therefore reverse the judgment of the court below, and here render judgment in favor of the plaintiff for the amount sued for, to be paid into the registry of the court, to abide its order as to payment thereof to the plaintiff and her minor child upon proper proceeding, in which the minor may be properly represented.

*Reversed and rendered.*

Delivered March 21, 1895.

Writ of error refused.