LAWSON v. UNITED BENEV. ASS'N. *
(No. 8358.)

(Court of Civil Appeals of Texas. Ft. Worth.
April 8, 1916. Rehearing Denied
May 6, 1916.)

1. INSURANCE ☞771—MUTUAL BENEFIT ASSOCIATION — BENEFICIARY — CONSTITUTION AND BY-LAWS.

Under a mutual benefit association policy designating one as beneficiary by name, followed by the words, "bearing relationship of husband," and expressly subject to the constitution and laws of the association, which limit beneficiaries to husband or wife or certain relatives, a divorced husband cannot take as beneficiary, although the designation has not been changed by the wife in her life.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1935, 1937; Dec. Dig. ☞771.]

2. INSURANCE ☞767—INSURABLE INTEREST—HUSBAND.

A divorced husband has no insurable interest in the life of his former wife.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1929–1931; Dec. Dig. ☞767.]

3. INSURANCE ☞775—MUTUAL BENEFIT ASSOCIATIONS—CHANGE OF BENEFICIARY.

Where a mutual benefit policy, limiting beneficiaries to husband and wife and relatives, was payable to a husband, who was later divorced, no right to recover on the policy was given him by the will of his former wife in his favor.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1941; Dec. Dig. ☞775.]

4. INSURANCE ☞755(3) — MUTUAL BENEFIT ASSOCIATIONS—CHANGE OF BENEFICIARY—ESTOPPEL.

An association is not estopped to deny the rights of a divorced husband as beneficiary on his wife's policy by accepting premiums thereon from him after divorce, or by paying him, after her death, a funeral benefit, for the payment of premiums may be presumed to have been for the benefit of surviving children and the funeral benefit to have been used for funeral expenses.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1909–1913, 1915, 1916; Dec. Dig. ☞755(3).]

5. INSURANCE ☞743—MUTUAL BENEFIT ASSOCIATIONS—INSURANCE PREMIUMS—VOLUNTARY PAYMENTS.

Voluntary payments of premiums by one not a beneficiary of a policy cannot be recovered.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1888; Dec. Dig. ☞743.]

Appeal from District Court, Tarrant County; J. W. Swayne, Judge.

Action by James W. Lawson against the United Benevolent Association. From a judgment for defendant, plaintiff appeals. Affirmed.

Lattimore, Cummings, Doyle & Bouldin, of Ft. Worth, for appellant. Morris Rector, of Ft. Worth, for appellee.

DUNKLIN, J. On November 29, 1895, the United Benevolent Association, incorporated as a fraternal insurance company, issued a life insurance policy to Mrs. Margaret E. Lawson, which contained, among others, the following stipulations:

"This certificate issued by and under the authority of a charter granted by the state of Texas, to the Supreme Lodge, United Benevolent Association, witnesseth: That Margarete E. Lawson, a member of the Ft. Worth Lodge No. 1, of said order, located at Ft. Worth in the state of Texas, is entitled to all the rights and privileges of membership in the United Benevolent Association and to participate in the death benefit fund in the sum of two thousand dollars in the event of his death, or one half of such amount in case of permanent total disability as defined by the laws, and according to the constitution and laws of said Supreme Lodge United Benevolent Association, now or hereafter in force. The said member hereby designates that the sum payable at his death shall be paid to James Willis Lawson bearing relationship of husband, if living, or if dead to the heirs at law of said member. This certificate is issued in consideration of the representations, agreements and warranties made in the application of said above-named member, which application is made a part of this certificate, and upon the express condition that the said member shall, in every

particular, while a member of said association, comply with the constitution and all the laws, rules and requirements of the Supreme Lodge United Benevolent Association now in force, or that may at any time hereafter be enacted and in case of any failure or default, this certificate will at once lapse and become void. Any false or fraudulent statement contained in the application for this certificate, or any concealment of facts, shall render this certificate null, void and of no effect."

On the back of the policy was the following:

"No. 36, death benefit certificate, $2000.00, issued by the Supreme Lodge United Benevolent Association to Mrs. M. E. Lawson, of Ft. Worth, town, Tarrant county, Texas, State. Member of Ft. Worth Lodge No. 1."

Following is a provision of the original constitution and by-laws of the association:

"Art. 17. *Beneficiary—Who—Change in.* The beneficiary of a member must be some blood relative or some one dependent upon him for support, and should no person be named in the certificate, then it shall be payable to the legal heirs of the member. Should a member die without having any legal heirs, or other proper beneficiaries, in accordance with this law, then the amount due upon his certificates shall be placed in the benefit fund. The legal heirs of a member shall be considered in accordance with the provisions of the laws of the state of Texas. A change in the beneficiary named in the certificate may be made at any time upon surrendering the certificate to the secretary, with the request on back of same properly filled out, and paying him the regular fee of $1.00 which fee, together with the certificate, must be forwarded to the supreme secretary, when a new certificate will be issued."

Following are provisions of the constitution and by-laws of the association as compiled and codified August 11, 1909:

"Art. 2. The object of this corporation shall be for benevolent purposes only.

"1. To unite fraternally all persons of sound bodily health and good moral character, who are socially acceptable, and between sixteen and sixty years of age.

"2. To give all moral and material aid in its power to members and those dependent on them.

"3. To improve its members socially, morally and intellectually

"4. To establish a fund for the relief of sick and distressed members.

"5. To establish a benefit fund from which on the satisfactory proof of the death of a member of the association, who has complied with all the requirements, a sum not to exceed two thousand dollars, whole life, and five thousand dollars limited payment, shall be paid direct to the family; or orphans or dependents, as the member may direct."

"Art. 55. The beneficiary certificate shall be made payable to the member's husband or wife, or children, or parents, or adopted children, or blood relations to the fourth degree ascending or descending, or any other person who is dependent upon such member in accordance with the application; but under no circumstances shall the certificate be made payable to the member's estate or to any person other than those above enumerated. A change in the beneficiary named in the certificate may be made at any time upon surrendering the certificate to the subordinate secretary with the request on the back of same properly filled out, and paying him a fee of $1.00, which fee, together with the certificate shall, by the subordination secretary be forwarded to the Supreme Secretary, when a new certificate will be issued, bearing the same number and date, in favor of the new beneficiary."

"Art. 59. * * * All benefits shall be paid to the member within ninety days after proofs

185 S.W.—62

of permanent total disability or of old age limit shall have been made, in accordance with the foregoing provisions and approved by the executive committee. Within ninety days after proofs of death of the members shall have been approved by the executive committee, payment shall be made to the beneficiary or beneficiaries therein named, who shall be living at the date of such payments; but if such beneficiary or beneficiaries shall be deceased at the date of his death, then the same shall be made to the heirs at law of the deceased member, in accordance with the statute of descent and distribution of the state of Texas. Should no legal heirs appear within one year the amount shall revert to the benefit fund."

"Art. 35. * * * Provided, that the $100.00 paid under articles 10 and 59, shall be a credit on said certificate."

"Art. 10. * * * And upon receipt of the notice of the death of a member shall immediately forward to the subordinate secretary where such membership is lodged, the blanks for proving his death, and unless some legal or other obstacle prevent, shall immediately forward to the beneficiary $100.00 funeral benefit, and shall notify the executive committee at its next meeting of such death. * * *"

At the time the policy was issued James Lawson was the husband of the member as recited in the policy, but that marriage was dissolved by a decree of divorce dated February 25, 1902. Mrs. Margaret Lawson died August 12, 1912, and James Lawson instituted this suit against the company to recover the amount of the policy. From a judgment adverse to him he has appealed.

After the divorce decree mentioned, James Lawson married again, and his second wife, Mrs. Bettie Lawson, died May 16, 1910. The defendant company is a fraternal beneficiary organization which is not operated for profit. All assessments and dues accruing on the policy up to the date of the death of Mrs. Margaret Lawson were paid, and Mrs. Lawson was a member in good standing when she died. She took no steps to change the name of the beneficiary metioned in the policy by surrendering that policy and receiving a new one in its stead, as she could have done under article 55 of the constitution of the association copied above. Upon the death of Mrs. Bettie Lawson, the second wife, the company tendered to James Lawson a check for $100 as a funeral benefit. At that time the officers of the company believed that the wife of James Lawson who had then died was Mrs. Margaret Lawson. The check was declined by James Lawson, who then informed such officers that he had been divorced from Mrs. Margaret Lawson, had married Mrs. Bettie Lawson, and that his wife who had died was the latter, and not Mrs. Margaret Lawson. This was the first information any of the officers of the association had of the divorce. The evidence tends to show that thereafter they accepted from James Lawson some of the assessments and dues on the policy, but the amount so paid by James Lawson does not definitely appear, and when Mrs. Margaret died in 1912 they sent him $100 as a funeral benefit, which he accepted. According to the uncontroverted evidence,

after learning of the divorce, some of the officers of the company tried to locate Mrs. Margaret Lawson, to the end that the policy might be changed so as to make the death benefit payable in accordance with the constitution and by-laws of the association. But they failed to find the member, and, according to the testimony of some of those officers, which was not controverted by James Lawson himself, he refused to inform them of the whereabouts of Mrs. Margaret Lawson when inquiry was made of him for that information. There were born to the marriage of James W. Lawson and Mrs. Margaret Lawson two children, Willis W. Lawson and Margaret Ruth Lawson, who married E. T. Keough. After the death of the mother of these children they instituted suit against the association in the district court of Harris county to recover the amount of the policy. The plaintiffs in that suit claimed the benefits of the policy by reason of the fact that they were the heirs at law of Mrs. Margaret Lawson, and therefore beneficiaries under and by virtue of the constitution and by-laws of the association and the terms of the policy. On February 20, 1913, a judgment was rendered in that suit in favor of the plaintiffs for the full amount of the policy. From that judgment an appeal was prosecuted, which resulted in an affirmance of the judgment, such judgment appearing in 166 S. W. p. 713. Later the judgment was paid in full to the plaintiffs in that suit. James W. Lawson was made a party defendant to the suit by the plaintiffs, who afterwards dismissed as to him. F. M. Bransford, trustee in bankruptcy for James W. Lawson, was made a party defendant by the insurance company, and the judgment rendered decreed that such trustee had no interest in the proceeds of the policy. During the marital relation of James Lawson and Mrs. Margaret Lawson, the latter executed a last will and testament, devising to him her entire estate. After the death of Mrs. Margaret Lawson, this will was duly probated, and the insurance policy in controversy in this suit was listed in the inventory of the estate as an asset belonging to the estate of the decedent, and in the present suit James Lawson claimed the benefits of the policy under and by virtue of that will, as well as by virtue of the terms of the policy.

[1] The constitution and by-laws of the association clearly became a part and parcel of the contract of insurance as shown on the face of the policy itself. On the face of these documents the conclusion cannot be avoided that it was not intended or understood that James Lawson should have any insurable interest in the policy after he ceased to bear the relationship of husband of the member, and that upon her death her two children were the only persons who could claim as beneficiaries.

[2, 3] After the divorce James Lawson had no insurable interest in the life of Mrs. Margaret Lawson, even under the common-law rule, irrespective of the constitution and by-laws of the association. Hess v. Segenfelter, 127 Ky. 348, 105 S. W. 476, 14 L. R. A. (N. S.) 1172, 128 Am. St. Rep. 343, and authorities there cited. In Cheeves v. Anders, 87 Tex. 287, 28 S. W. 274, 47 Am. St. Rep. 107, our Supreme Court said:

"It is against the public policy of this state to allow any one who has no insurable interest to be the owner of a policy of insurance upon the life of a human being."

To the same effect are Price v. Knights of Honor, 68 Tex. 361, 4 S. W. 633; Schoenfield v. Turner, 75 Tex. 329, 12 S. W. 626, 7 L. R. A. 189; Ins. Co. v. Hazlewood, 75 Tex. 351, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893; Green v. Green, 147 Ky. 608, 144 S. W. 1073, 39 L. R. A. (N. S.) 370, Ann. Cas. 1913D, 683, and authorities there cited. In Hatch v. Hatch, 35 Tex. Civ. App. 373, 80 S. W. 411, the Court of Civil Appeals of the Fifth District held that the insurable interest in such a policy, vested in a wife, ceases by operation of law as soon as her marriage is dissolved by a decree of divorce. And in that case a writ of error was denied by our Supreme Court.

"Where the classes of persons to whom benefits may be paid are prescribed by statute, or by the society's charter of incorporation, neither the society nor a member, nor the two combined, can divert the fund from the classes prescribed, the society has no power to issue a certificate payable to a person not belonging to one of those classes, and the designation of a person thus ineligible as a beneficiary is nugatory." 29 Cyc. 108.

If the fund cannot be so diverted by a member while living, clearly he cannot do so by will, as appellant insists in effect was done by the will of Mrs. Margaret Lawson.

[4, 5] We cannot perceive how it can be said that the insurance company is estopped to controvert the claim of James Lawson as a beneficiary. The record does not show who paid the assessments and dues on the policy prior to the death of the second wife of James Lawson. As noted already, the evidence in the statement of facts tends to show that after the death of Mrs. Bettie Lawson, James Lawson did pay some of those assessments, the amount of which payments does not appear, but there is no evidence whatever to show that he made such payments under any contract or agreement with the association that the policy should be payable to him upon the death of Mrs. Margaret Lawson in consideration of such payments. Under those circumstances, the association reasonably could not have reached any other conclusion than that James Lawson was making such payments merely as a volunteer for the benefit of his two children, who afterwards collected the benefits in full. Nor would the fact that, after the death of Mrs. Margaret Lawson, the company paid a funeral benefit of $100 to James Lawson operate as an estoppel, especially as no other payments were thereafter made by Lawson to the association. The amount so paid to

James Lawson was without any consideration whatever so far as this record shows, unless it be assumed that said payments were made for the purpose of defraying the funeral expenses of Mrs. Margaret Lawson, and that the money was so used. The payments, if any, made by James Lawson being voluntary payments only, he had no right to claim from the company reimbursements therefor. Grand Lodge A. O. U. W. v. Cleghorn, 42 S. W. 1043; Hanna v. Hanna, 10 Tex. Civ. App. 97, 30 S. W. 820; Jory v. Supreme Council, 105 Cal. 20, 38 Pac. 524, 26 L. R. A. 733, 45 Am. St. Rep. 17.

For the reasons indicated all assignments of error are overruled, and the judgment is affirmed.